```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/30/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

UNITED STATES OF AMERICA,

        -against-

JOSE RODRIGUEZ,

                      Defendant.

-------------------------------------------------------------- x

**ORDER DENYING
DEFENDANT'S MOTION TO
DISMISS AND REGULATING
EVIDENTIARY ISSUES**

19 Cr. 779 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        In this motion, Jose Rodriguez ("Defendant") seeks to dismiss a multi-count indictment dated October 30, 2019, charging Defendant with Conspiracy to Commit Murder in Aid of Racketeering (Count One); Murder in Aid of Racketeering (Count Two); Murder Through the Use of a Firearm (Count Three); and Felon in Possession of Ammunition (Count Four). *See* Indictment, 19 Cr. 779, ECF No. 2 ("2019 Indictment"); *see also* Def.'s Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 29 ("Def. Mem."). According to the Government, these charges relate to Defendant's alleged involvement in the shooting death of Daquan Cooper in the vicinity of 1595 Unionport Road in the Parkchester neighborhood of the Bronx on or about June 25, 2015. *See* Gov't Mem. of Law in Opp'n to Mot. to Dismiss, ECF No. 31, at 1 ("Gov't Mem."). Defendant also moves to compel pretrial disclosure of certain evidentiary material and notices.

        For the reasons that follow, Defendant's motion is denied, except insofar as the Government is directed to make certain evidentiary disclosures as provided below.

**Background**

A. 2016 Indictment

   In April 2016, Defendant was arrested pursuant to a superseding indictment charging dozens of individuals with racketeering, narcotics, and firearm offenses in connection with a street gang called the "Big Money Bosses" ("BMB"). *See* Superseding Indictment, S2 15 Cr. 95 (AJN) ("2016 Indictment"). The indictment alleged that BMB was a criminal organization whose members and associates engaged in murder, attempted murder, robbery, attempted robbery, narcotics trafficking, bank fraud, and the passing of counterfeit currency. *Id.* at 5. Although BMB was a faction of the "Young Bosses" or "YBz" street gang, which operated in various parts of New York City, BMB itself operated principally in the northeast Bronx near White Plains Road between 215th and 233rd Streets, and in the vicinity of Boston Road and Eastchester Road. *Id.* at 5-6.

   The 2016 Indictment charged Defendant with four counts corresponding to alleged misconduct spanning approximately 2007 through 2016: Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); Narcotics Conspiracy, in violation of 21 U.S.C. § 846 (Count Two); Distribution of Narcotics Within One Thousand Feet of Playgrounds and Schools, in violation of 21 U.S.C. §§ 846, 860; 18 U.S.C. § 2 (Count Three); and Use of Firearms in Furtherance of Counts One and Two, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), (2) (Count Four).

   In describing the racketeering enterprise and its operations, the indictment alleged that BMB associates committed acts of violence on behalf of the organization, including shootings and stabbings resulting in death. *Id.* at 6-7, 10. The indictment did not identify the shooting of Daquan Cooper, although it did discuss other specific incidents of homicide. *Id.*

In May 2016, Defendant's counsel filed a bail application seeking Defendant's release from custody. Def. Mem. at 7. In advance of a bail hearing before Magistrate Judge Ellis, the Government submitted a letter opposing Defendant's request for release and describing the extent of Defendant's alleged role in the BMB enterprise. *Id.*, Ex. G, ECF No. 29-7 ("2016 Bail Letter"). The letter described BMB's history of violence in the northeast Bronx, including shootings and stabbings of rival gang members. *Id.* at 2-4. It also elaborated on Defendant's alleged role in committing certain acts of violence as "one of the original members of BMB," including a stabbing in October 2009, forcible robbery of a cell phone in September 2009, and resisting arrest and aiding in the escape of a fellow BMB associate in January 2011 by using force against police trying to effectuate an arrest. *Id.* at 8-9.

B. 2016 Plea Agreement and Allocution

On or about December 7, 2016, the Government provided Defendant's counsel with a plea agreement to resolve the charges in the 2016 Indictment. *See* Def. Mem., Ex. H., ECF No. 29-8 ("2016 Plea Agreement"). Under the terms of the agreement, Defendant agreed to plead guilty to two counts of the 2016 Indictment: Count One (Racketeering Conspiracy) and Count Four (using, carrying, and possessing firearms in relation to the narcotics conspiracy charged in Count Two). *Id.* In exchange for Defendant's plea, the Government pledged to dismiss any remaining counts and not to further prosecute Defendant for certain crimes. Specifically, the agreement provided:

> In consideration of the defendant's plea to the above offenses, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement), for: (1) participating in a racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d), from at least in or about 2007, up to and including in or about 2016, as charged in Count One of the Indictment; and (2) using, carrying, and possessing firearms during and in relation to the narcotics conspiracy charged in Count Two of the Indictment, as charged in Count Four of the Indictment, it being understood that this agreement does not bar the use of such

3

conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq*.

*Id.* at 1-2. The agreement also stipulated to various sentencing calculations. *Id.* at 2-6.

On December 15, 2016, Defendant pled guilty to Counts One and Four, pursuant to the plea agreement reached with the Government. *See* Def. Mem., Ex. I., ECF No. 29-9 ("Plea Transcript"). During his plea allocution, Defendant admitted to the following conduct:

> Between 2007 and 2016, in the Bronx and elsewhere, I agreed with others to participate in activities of the enterprise charged in Count One of the indictment. Among other things, the agreement and conduct included possession and sales of marijuana in amounts greater than 60 kilograms. I knew that this conduct was illegal. Furthermore, on October 4, 2011, in connection with my agreement with others to possess and sell marijuana referenced in Count Two, I possessed and carried a handgun in order to protect myself in carrying out the activities.

*Id.* at 20.

When asked by the court to clarify the identity of the enterprise for which Defendant engaged in this conduct, Defendant confirmed that he was acting on behalf of the BMB gang. *Id.* at 21. On May 18, 2017, Defendant was sentenced to 84 months' imprisonment and three years of supervised release on Counts One and Four of the 2016 Indictment. *See* Def. Mem., Ex. K., ECF No. 29-11, at 35 ("Sentencing Transcript").

C. Present Indictment

On or about March 8, 2017, a multi-count indictment was filed against several individuals, alleging participation in a racketeering conspiracy as part of a criminal enterprise known as the "Beach Avenue Crew." *See* Superseding Indictment, S2 15 Cr. 854 (LTS); Def. Mem., Ex. L., ECF No. 29-12. Defendant Rodriguez was not named in this indictment.

On October 30, 2019, a grand jury returned the present indictment, charging Defendant with four counts:  Conspiracy to Commit Murder in Aid of Racketeering, in violation

4

of 18 U.S.C. § 1959(a)(5) (Count One); Murder in Aid of Racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 (Count Two); Murder Through the Use of a Firearm, in violation of 18 U.S.C. §§ 924(j) and 2 (Count Three); and Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count Four). *See* 2019 Indictment at 1-8.

The indictment alleges that Defendant was a member of the Beach Avenue Crew, a criminal organization involved in narcotics trafficking and violent acts principally in the vicinity of the Parkchester neighborhood in the Bronx. From approximately 2008 until 2017, Beach Avenue Crew members and associates allegedly engaged in a series of violent disputes with rival Bronx gangs hailing from Taylor Avenue, Leland Avenue, and the Parkchester Apartment housing complex, among others. *Id.* at 2. Beach Avenue Crew members and associates allegedly committed assault and murder to protect the gang's drug territory, retaliate against rival gangs, and promote the gang's reputation. *Id.* at 2-3.

The 2019 Indictment concerns Defendant's alleged involvement in the murder of Daquan Cooper on or about June 25, 2015 in the vicinity of 1595 Unionport Road in the Bronx. Count One alleges, *inter alia*, that Defendant, along with others, conspired to murder Cooper for the purpose of gaining entrance to and maintaining and promoting his position in the Beach Avenue Crew. *Id.* at 4-5. Count Two alleges, *inter alia*, that Defendant and others knowingly and intentionally murdered Cooper, and aided and abetted the same, by shooting and killing Cooper for the purposes described in Count One. *Id.* at 6-7. Count Three alleges, *inter alia*, that Defendant knowingly possessed and used firearms to carry out Cooper's murder. *Id.* at 7-8. Finally, Count Four alleges, *inter alia*, that Defendant knowingly carried a 9mm Luger caliber Winchester Cartridge on the day of the murder, despite having been previously convicted of a

felony.[1]  *Id.* at 8.  The indictment concludes by making special findings as to the intentionality of Defendant's actions.  *Id.* at 9-10.

D.  Procedural History

On November 12, 2019, I issued a protective order governing the procedures by which certain material would be disclosed by the Government to Defendant's counsel.[2]  ECF No. 9.  Following multiple status conferences, I issued an order on May 28, 2020, setting the final pretrial conference for January 6, 2021 to be followed by a trial on January 11, 2021.  ECF No. 22.  On June 10, 2020, the Government submitted a letter to the Court indicating that the Government would not be seeking the death penalty in this case.  ECF No. 23.

On August 10, 2020, Defendant filed the present motion seeking to dismiss the 2019 Indictment and requesting certain evidentiary orders.  Specifically, Defendant asks the Court to:

1.  Dismiss Counts One, Two, and Three as violative of the Double Jeopardy Clause;
2.  Dismiss all counts as violative of Defendant's 2016 Plea Agreement;
3.  Direct the Government to comply with discovery obligations under *Brady* and Fed. R. Crim. P. 16;
4.  Direct the Government to comply with discovery obligations under *Giglio*;
5.  Direct the Government to produce Fed. R. Crim. P. 16(a) and Jencks Act material no less than thirty (30) days prior to trial;
6.  Direct the Government to immediately identify its theories of admissibility with respect to any evidence it intends to introduce at trial pursuant to Fed. R. Evid. 404(b);

---

[1] As alleged by the Government, Count Four of the 2019 Indictment relates to the live ammunition that Defendant allegedly possessed and left behind at the scene of Cooper's murder.  *See* Gov't Mem. at 3.

[2] The protective order was granted pursuant to a request by both the Government and defense counsel to facilitate discovery.  The order governs the procedures by which the parties handle sensitive and non-sensitive discovery materials.  *See, e.g.,* ECF No. 9 at ¶ 2 ("The Government's designation of material as sensitive disclosure material will be controlling absent contrary order of the Court."); *id.* at ¶ 7 ("Sensitive disclosure material shall be kept in the sole possession of counsel . . . .").  The order did not impose a deadline for discovery disclosures.

7. Direct the Government to disclose all proposed demonstrative evidence and summary charts before trial;

8. Direct the Government to disclose the identity and substance of co-conspirator statements intended to be offered at trial pursuant to Fed. R. Evid. 801(d)(2)(E);

9. Permit Defendant to reserve his right to make additional motions as necessary.

10. Provide other and further relief as the Court deems reasonable and proper.

*See* ECF Nos. 27-29. On August 25, 2020, the Government filed its opposition to Defendant's motion. ECF No. 31. Oral argument was held telephonically on September 23, 2020.

### Discussion

Defendant's core argument in support of his motion to dismiss is that the 2019 Indictment constitutes a successive prosecution of previously charged misconduct for which Defendant pled guilty in 2016, pursuant to a plea deal. As such, Defendant asserts that Counts One, Two, and Three of the 2019 Indictment are barred by double jeopardy, and that all counts are barred by the 2016 Plea Agreement. *See* Def. Mem. at 4, 12-16. Assuming any of these counts survive the present motion, Defendant also requests certain evidentiary orders. I address each of these issues in turn.

A. Double Jeopardy

   *1. Legal Principles*

The Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "This Double Jeopardy Clause protects against both multiple punishments and successive prosecutions for the same offense, regardless of whether a first prosecution resulted in conviction or acquittal." *United States v. Basciano*, 599 F.3d 184, 196 (2d Cir. 2010) (citing *Schiro v. Farley*, 510 U.S. 222, 229

(1994)). The Double Jeopardy Clause "confers its protections in three different situations—
where there is a second prosecution for the same offense after acquittal of that offense; where
there is a second prosecution for the same offense after conviction of the offense; and where
there are multiple punishments for the same offense." *United States v. Estrada*, 320 F.3d 173,
180 (2d Cir. 2003).

A double jeopardy claim based on successive prosecutions of the same offense
"cannot succeed unless the charged offenses are the same in fact and in law." *Id.*; *see also
Basciano*, 599 F.3d at 196 ("In the case of successive prosecutions, the critical inquiry is whether
the offenses are the same in fact and in law." (quotations omitted)).

Where, as here, such claims are based on successive prosecutions under different
statutes, the initial inquiry focuses on whether the two offenses are the same in law. *See
Basciano*, 599 F.3d at 196 (citing *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999)).
To determine whether two offenses are the "same in law," courts rely on the "same-elements"
test established in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See United States v.
Weingarten*, 713 F.3d 704, 708 (2d Cir. 2013); *United States v. Sessa*, 125 F.3d 68, 71 (2d Cir.
1997).

"The *Blockburger* inquiry asks whether each offense contains an element not
contained in the other, and provides that, if not, they are the same offence and double jeopardy
bars additional punishment and successive prosecution." *Weingarten*, 713 F.3d at 708
(quotations and citations omitted). On the other hand, "[i]f there is an element in each offense
that is not contained in the other, they are not the same offense for purposes of double jeopardy,
and they can both be prosecuted." *Chacko*, 169 F.3d at 146; *see also United States v. Khalil*, 214
F.3d 111, 118 (2d Cir. 2000) ("If each section requires proof of at least one fact that the other

does not, there are two offenses, and it is presumed that the legislature intended to authorize prosecution and punishment under both.").

The *Blockburger* test focuses exclusively on the legal elements of the statutes under which the defendant has been charged and does not require a factual analysis of the underlying conduct at issue. *See Basciano*, 599 F.3d at 197-98 (holding that the *Blockburger* test for determining the propriety of successive prosecutions under different statutes does not include an analysis of whether the same conduct is at issue); *United States v. Araujo*, No. 17-CR-438 (VEC), 2018 WL 3222527, at *3 (S.D.N.Y. July 2, 2018) ("Under [the *Blockburger*] test, a court looks only to the offense as Congress has defined it, not to the facts or conduct at issue in either of the two prosecutions.").

Provided the *Blockburger* test is satisfied, there is no double jeopardy prohibition against successive prosecutions based on the same conduct. *See United States v. Asaro*, No. 14-CR-26 ARR, 2014 WL 4185138, at *2-3 (E.D.N.Y. Aug. 21, 2014). Thus, for example, the Government may successively charge a defendant first with substantive RICO and then with RICO conspiracy, without running afoul of the Double Jeopardy Clause. *See Sessa*, 125 F.3d at 71-73. Similarly, "the law permits a defendant to be prosecuted—either simultaneously or at separate times—for both substantive racketeering and the predicate crimes evidencing the pattern of racketeering." *Basciano*, 599 F.3d at 205 (citing *United States v. Walsh*, 700 F.2d 846, 856 (2d Cir. 1983)). Likewise, the Second Circuit has "long recognized that a defendant may be prosecuted both for substantive racketeering . . . and for the commission of violent crimes in aid of racketeering." *Id.* at 198 (citing *United States v. Polanco*, 145 F.3d 536, 542 (2d Cir. 1998)). The same result obtains with respect to RICO conspiracy and conspiracy to commit violent crimes in aid of racketeering. *Id.*

9

However, if a court determines that two charges are the same in law under *Blockburger*, "the next step is to determine whether they are the same in fact." *Araujo*, 2018 WL 3222527, at \*3 (citing *Basciano*, 599 F.3d at 197-98 (quotations omitted)). To determine whether successive prosecutions are based on offenses that are the "same in fact," the Second Circuit employs "a burden-shifting framework that requires the defendant, in the first instance, to make a colorable showing that the crimes are the same, whereupon the government is required to demonstrate 'by a preponderance of the evidence' that a person 'familiar with the totality of the facts and circumstances would *not*, in fact, construe the initial indictment, at the time jeopardy attached, to cover the offense that was charged in the subsequent prosecution.'" *Basciano*, 599 F.3d at 197 (quoting *United States v. Olmeda*, 461 F.3d 271, 282-83 (2d Cir. 2006) (emphasis in original)).

At bottom, "the Double Jeopardy Clause neither forbids successive prosecutions for different offenses nor requires the government to join all possible charges arising from a course of conduct in a single indictment." *Sessa*, 125 F.3d at 73.

*2. Application*

Defendant argues that the Government violated the Double Jeopardy Clause by "slicing and dicing a single pattern of criminal activity and scattering some predicates from one indictment, now resolved, to another indictment, now charged." Def. Mem. at 12. Defendant further suggests that the Government is using "linguistic crafting" to make it look like Defendant is being charged with different conduct, when in reality, the 2019 Indictment is merely a successive prosecution for conduct covered by the 2016 Indictment and subsequent plea agreement. *See id.* at 13-14.

10

In particular, Defendant notes that the 2016 Indictment alleged Defendant was a "founding member" and active participant in the *BMB street gang* for almost ten years, but the 2019 Indictment "conveniently alleges" that Defendant committed unlawful acts on behalf of the *Beach Avenue Crew* during that same period. *Id.* at 13. For example, in connection with a bail hearing following Defendant's 2016 arrest, prosecutors represented that in July 2015, Defendant sold narcotics alongside another BMB drug dealer, and that such joint dealing was indicative of Defendant's membership in the BMB gang. *Id.* at 14; *see also* 2016 Bail Letter at 8. However, the present indictment alleges that Defendant committed a murder in June 2015 in furtherance of the *Beach Avenue Crew's* affairs. Given the close temporal proximity between the drug dealing and the act of violence, Defendant suggests that the Government is merely tacking on a different gang label to enable a successive prosecution for the same gang-related offenses alleged in the 2016 Indictment. Def. Mem. at 14. Accordingly, Defendant moves for dismissal of Counts One, Two, and Three on double jeopardy grounds.

The Government counters that the charges in the 2019 Indictment are both legally and factually distinct from those to which Defendant pled guilty in 2016, and therefore a successive prosecution is not barred by double jeopardy. Gov't Mem. at 8-10.

I find no double jeopardy violation here. As an initial matter, both parties agree that the double jeopardy analysis begins with *Blockburger*'s same-elements test where, as here, Defendant has been charged under different statutes. *See Basciano*, 599 F.3d at 196. In 2016, Defendant pled guilty to Racketeering Conspiracy under 18 U.S.C. § 1962(d); and to a firearm offense under 18 U.S.C. § 924(c)(1)(A)(i). By contrast, the first three counts of the 2019 Indictment[3] involve legally distinct statutes pertaining to an alleged murder: Conspiracy to

---

[3] Defendant has confined his double jeopardy challenge to the first three counts of the 2019 Indictment.

Commit Murder in Aid of Racketeering, 18 U.S.C. § 1959(a)(5); Murder in Aid of Racketeering,

18 U.S.C. §§ 1959(a)(1) and 2; and Murder Through the Use of a Firearm, 18 U.S.C. §§ 924(j)

and 2. Accordingly, I must first determine whether the two sets of charges are the "same in

law." *Id.*; *Araujo*, 2018 WL 3222527, at *3.

With respect to the first two counts of the 2019 Indictment, the Second Circuit's

decision in *Basciano* is dispositive.[4] *See Basciano*, 599 F.3d at 197–99. There, the Second

Circuit applied the *Blockburger* test and held that substantive and conspiratorial RICO charges

under 18 U.S.C. § 1962 were "legally distinct" from substantive and conspiratorial violent

crimes in aid of racketeering under 18 U.S.C. § 1959(a). *Id.* Accordingly, successive

prosecutions for RICO, and for violent acts in aid of racketeering, did "not implicat[e] double

jeopardy concerns." *Id.*; *see also Polanco*, 145 F.3d at 542 ("[T]he government may prosecute a

defendant both under RICO for engaging in a pattern of racketeering activity and also under §

1959 for violent crimes intended to maintain or increase the defendant's position in the RICO

enterprise."). Here, with respect to the first two counts of the 2019 Indictment, Defendant makes

the same arguments rejected by the Second Circuit in *Basciano*. Accordingly, Defendant's

motion to dismiss Counts One and Two on double jeopardy grounds is denied.

Count Three of the 2019 Indictment requires closer inspection, although neither

party appears to address the issue in detail. In 2016, Defendant pled to the use of a firearm in

connection with a narcotics conspiracy under 18 U.S.C. § 924(c) (using, carrying, or possessing

---

[4] Defendant appears to concede this point, albeit in qualified terms. *See* Def. Mem. at 13 ("Although from a superficial analysis it would appear that the defendant's double jeopardy claims as to Counts One, Two and Three are foreclosed by the Second Circuit's holding in *United States v. Basciano, supra*, a closer look reveals that only by the linguistic crafting of the 2019 indictment does it appear that way."). Defendant thereafter argues that the indictments address the same underlying conduct, but Defendant fails to address the issue of legal identity between the charges as required under *Blockburger*. In any event, as discussed below, I find that the two sets of charges are not the same in fact.

firearms during and in relation to a crime of violence or drug trafficking), while Count Three of the 2019 Indictment charges Defendant with murder using a firearm under 18 U.S.C. § 924(j) (causing the death of a person through use of a firearm in the course of violating § 924(c)). There is some case law suggesting that a § 924(c) offense is a lesser-included offense of § 924(j). *See, e.g.*, *United States v. Wilson*, 579 F. App'x 338, 348 (6th Cir. 2014) (holding that "§ 924(c) is a lesser-included offense of § 924(j)—which means that, for purposes of the Double Jeopardy Clause, § 924(c) counts as the 'same offense' as § 924(j)"); *United States v. Catalan-Roman*, 585 F.3d 453, 472 (1st Cir. 2009) (holding that a conviction under both § 924(c) and § 924(j) violated double jeopardy because both charges stemmed from the use of a firearm during the same robbery that resulted in a death); *see also United States v. Sanchez*, 623 F. App'x 35, 38 n.1 (2d Cir. 2015) (summary order) (noting that § 924(c) is a lesser included offense of § 924(j)).

Assuming arguendo that the two firearm statutes are the "same in law" under *Blockburger*, the next step is to determine whether the successive charges are the "same in fact." *Olmeda*, 461 F.3d at 282.  Under the Second Circuit's burden-shifting framework, Defendant must first make a "colorable showing that the crimes are the same," after which the burden shifts to the Government to demonstrate by a preponderance that a person "familiar with the totality of the facts and circumstances" would not construe the 2016 Indictment to cover the offenses charged in the present prosecution. *Basciano*, 599 F.3d at 197 (citing *Olmeda*, 461 F.3d at 282-83 (quotations omitted)).

Here, Defendant attempts to make this colorable showing, in part, by highlighting certain temporal and geographic overlaps between the crimes to which Defendant pled guilty in 2016, and those charged in the 2019 Indictment.  Specifically, Defendant points to the fact that the alleged murder underlying the 2019 Indictment occurred in the Bronx in June 2015, but

Defendant has already been charged and pled guilty to a racketeering conspiracy based on conduct which occurred in the Bronx during approximately the same timeframe. Defendant also highlights acts of violence alleged by the 2016 Indictment as evidence that the earlier prosecution covered the presently charged offenses. The Government counters that there is no indication that the offenses charged in the 2016 Indictment covered Daquan Cooper's murder, which is alleged to have taken place on behalf of a different criminal enterprise operating in different parts of the Bronx.

I hold that the offenses charged in the 2016 Indictment are factually distinct from those charged in the present prosecution. Aside from a temporal overlap, there is little support for Defendant's position that the offenses are the same in fact. To begin, the shooting of Daquan Cooper was not mentioned in the 2016 Indictment. The murders alleged as predicates in the 2016 Indictment were either generic or pertained to different murders than those alleged in the 2019 Indictment. *See, e.g.*, 2016 Indictment at 12 (alleging a "pattern of racketeering activity consisting of . . . [m]ultiple acts involving murder"); *id.* at 6-7 (describing the murders of Sadie Mitchell, Keshon Potterfield, and Jeffrey Delmore). And even if the two indictments alleged the same murders, the 2016 Indictment did not charge these murders as substantive crimes; they were merely predicate acts and therefore could be subject to prosecution without running afoul of double jeopardy. *See Basciano*, 599 F.3d at 198, 205.

Furthermore, Daquan Cooper's killing was not referenced in Defendant's plea allocution, *see* Plea Transcript, ECF No. 29-9, nor during Defendant's sentencing, *see* Sentencing Transcript, ECF No. 29-11. And in connection with a 2016 bail hearing, the Government specified the acts of violence for which Defendant was allegedly responsible, including a stabbing, robbery, and resisting arrest; Cooper's murder was not mentioned. *See*

14

2016 Bail Letter at 8.  Moreover, as discussed in greater detail below, the 2016 Indictment, plea agreement, and allocution all make clear that Defendant was pleading guilty to crimes committed on behalf of *BMB*—and not the Beach Avenue Crew—a different criminal enterprise.  Therefore, even if Defendant has made a "colorable showing" that the 2016 crimes were the same as those charged in 2019—a dubious proposition at best—the Government has shown by a preponderance that a person familiar with the "totality of facts and circumstances" would not construe the 2016 Indictment to cover the presently charged offenses.  *Basciano*, 599 F.3d at 197.

In sum, even assuming that any of the 2016 counts are legally the same as those charged in the 2019 Indictment, the factual analysis leads to the conclusion that Defendant has not been successively charged with offenses that are "the same in fact and in law."  *Estrada*, 320 F.3d at 180.  Accordingly, Defendant's motion to dismiss Counts One, Two, and Three on double jeopardy grounds is denied.

## B.  2016 Plea Agreement

### *1.  Legal Principles*

As a general matter, "[p]lea agreements are interpreted in accordance with contract law principles."  *United States v. Colon*, 220 F.3d 48, 51 (2d Cir. 2000).  In determining whether a plea agreement has been breached, "courts look to the reasonable understanding of the parties as to the terms of the agreement."  *Id.* (citing *United States v. Altro*, 180 F.3d 372, 375 (2d Cir. 1999)).

Notwithstanding this comparison to contract law, plea agreements are afforded special protections because they are "unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." *Altro*, 180 F.3d at 375.  This "concern for fairness is rooted in an appreciation of the fact that, unlike ordinary contracts, plea

15

agreements call for defendants to waive fundamental constitutional rights, and in an awareness that the Government generally drafts the agreement and enjoys significant advantages in bargaining power." *Id.* (citing *United States v. Lawlor*, 168 F.3d 633, 636 (2d Cir. 1999)). Accordingly, ambiguities in a plea agreement are resolved against the government. *Id.*

However, where the terms of the plea agreement are not ambiguous, the agreement will be enforced according to its terms. *See, e.g., United States v. Feigenbaum*, 962 F.2d 230, 234 (2d Cir. 1992); *United States v. Dionisio*, 415 F. Supp. 2d 191, 202 (E.D.N.Y. 2006) ("The breach of plea agreement defense depends not on double jeopardy standards but on the language used in the plea agreement, subject to strict contract interpretation."), *aff'd*, 503 F.3d 78 (2d Cir. 2007).

*2.  Application*

Defendant argues that the 2016 Plea Agreement resolved his federal criminal liability stemming from his participation in the offense conduct charged in the 2016 Indictment. Def. Mem. at 14-15. At oral argument, Defendant claimed that the allegations in the 2016 Indictment led Defendant to reasonably believe that his plea covered the conduct charged in the present prosecution.

The Government counters that the plain terms of the plea agreement are devoid of any indication that the parties intended to prohibit the Government from prosecuting Defendant for the crimes alleged in the 2019 Indictment. I agree.

In determining whether the present charges violate the 2016 Plea Agreement, my review begins, as it must, with the text of the agreement itself. *See United States v. Pollack*, 91 F.3d 331, 335 (2d Cir. 1996) ("[W]e construe the present plea agreement strictly according to its

terms."); *Dionisio*, 415 F. Supp. 2d at 200 ("Plea agreements are to be interpreted using principles of contract law.").

The plain terms of the 2016 Plea Agreement do not bar the present prosecution. The agreement provides in relevant part that the U.S. Attorney's Office for the Southern District of New York will not further prosecute Defendant for "(1) participating in a racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d), from at least in or about 2007, up to and including in or about 2016, as charged in Count One of the Indictment; and (2) using, carrying, and possessing firearms during and in relation to the narcotics conspiracy charged in Count Two of the Indictment, as charged in Count Four of the Indictment." *See* 2016 Plea Agreement at 1-2. As discussed above, the 2019 Indictment does not charge Defendant with either of these offenses, and on this basis alone, the plea agreement does not preclude the present prosecution.

Further, the plea agreement expressly permits the Government to use conduct covered by the agreement as a predicate act for further prosecution. *Id.* at 2 ("[T]his agreement does not bar the use of such conduct as a predicate act . . . in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq*."). In addition, the terms of the agreement itself contain no mention of Daquan Cooper's murder, nor is such murder mentioned in the counts incorporated into the agreement by reference.

At oral argument, Defendant urged the Court to look beyond the four-corners of the agreement to determine what the parties reasonably understood the plea agreement to cover at the time it was executed. Defendant maintains that the 2016 Indictment and related communications from the Government alleged that BMB members committed acts of violence,

including murder, and that such representations led Defendant to reasonably believe that his 2016 plea covered the misconduct now alleged in the 2019 Indictment.

I am not persuaded. While consideration of parol evidence may be permissible in the context of evaluating potential breaches of a plea agreement, *see United States v. Feldman*, 939 F.3d 182, 189 (2d Cir. 2019), in the present case such a review does not support Defendant's position.

To begin, the 2019 Indictment alleges that Defendant engaged in murder on behalf of the *Beach Avenue Crew*, while the 2016 Indictment and plea addressed crimes committed on behalf of the *BMB* gang, a distinct organization operating principally in different parts of the Bronx. *See, e.g.*, Plea Transcript at 20-21 (pleading guilty to crimes committed on behalf of the BMB enterprise); 2016 Indictment at 5-6 (defining the relevant "Enterprise" as BMB). Although the 2016 Indictment discusses acts of violence committed by BMB members and associates, it does not mention Daquan Cooper's murder, Defendant's alleged involvement with the same, or any actions taken on behalf of the Beach Avenue Crew. *Cf.* 2016 Indictment at 6-7 (describing the murders of Sadie Mitchell, Keshon Potterfield, and Jeffrey Delmore).

Further, none of the other representations made by the Government or Defendant in connection with the 2016 charges mentioned the killing of Daquan Cooper or Defendant's involvement with the Beach Avenue Crew. For example, the Government's May 2016 bail letter identified Defendant's alleged role in committing acts of violence as "one of the original members of BMB," including a stabbing in October 2009, forcible robbery of a cell phone in September 2009, and resisting arrest and aiding in the escape of a fellow BMB associate in January 2011. *See* 2016 Bail Letter at 8-9. Again, the letter does not allege Defendant's involvement in a June 2015 murder, nor any actions taken in furtherance of the Beach Avenue

18

Crew.[5]  Similarly, Defendant's own plea allocution is completely devoid of reference to murder or other actions on behalf of the Beach Avenue Crew.  *See* Plea Transcript at 20-21 (allocuting to possessing and selling marijuana, and to possessing and carrying a firearm on October 4, 2011 in connection with an agreement to sell marijuana for BMB).

In short, Defendant has not shown that the parties to the 2016 Plea Agreement reasonably understood its terms to preclude Defendant's prosecution for an unspecified murder allegedly conducted on behalf of a different criminal enterprise.  *See Colon*, 220 F.3d at 51. Although I must construe ambiguities against the Government, *Altro*, 180 F.3d at 375, no such ambiguities exist here.  Simply put, the agreement's plain terms permit the present prosecution. *See Dionisio*, 415 F. Supp. 2d at 202.  Accordingly, Defendant's motion to dismiss Counts One, Two, Three, and Four of the 2019 Indictment is denied.

## C. Evidentiary Disclosures

Defendant seeks various evidentiary orders, including an order to compel the Government to comply with *Brady*, *Giglio*, and Fed. R. Crim. P. 16; to provide early disclosure of demonstrative evidence and summary charts, as well as materials pertaining to Fed. R. Crim. P. 16(a) and the Jencks Act; to immediately identify the Government's theories of admissibility with respect to evidence to be introduced at trial pursuant to Fed. R. Evid. 404(b); and to disclose

---

[5] Following oral argument, and with leave from the Court, defense counsel submitted a supplemental exhibit under seal, which contained a September 2016 letter sent by the Government to Judge Alison Nathan in connection with the 2016 Indictment.  *See* Def. Mem., Ex. Q.  The letter purports to advise the Court of the violent acts that the Government intended to prove at trial.  Defendant offers this letter in support of his argument that the 2016 Indictment alleged various violent crimes, including murders, and that Defendant therefore reasonably believed his 2016 plea covered the charges he now faces in connection with the alleged murder of Daquan Cooper.  I have reviewed this document and find that it does not change the analysis.  While the letter addresses acts of violence allegedly committed by the defendants named in the 2016 Indictment, there is no mention of the June 2015 shooting of Cooper or of violence in furtherance of the Beach Avenue Crew.  More importantly, the letter specifically ascribes certain acts to "JOSE RODRIGUEZ," including a 2009 robbery, 2010 assault, and a 2011 shooting.  Again, there is no allegation of Defendant's participation in a shooting or murder in June 2015.

the identity and substance of co-conspirator statements to be introduced at trial pursuant to Fed. R. Evid. 801(d)(2)(E). The Government objects primarily on the grounds that it has complied— and will continue to comply—with its discovery obligations, and that mandatory pretrial disclosure of Jencks Act materials and co-conspirator statements are barred by Second Circuit precedent.

1. *Legal Principles*

a. *Brady*, *Giglio*, and Federal Rule of Criminal Procedure 16(a)

The Second Circuit has held that *Brady* and *Giglio* disclosures need not be made immediately upon request by a defendant. *United States v. Coppa*, 267 F.3d 132, 142-46 (2d Cir. 2001). Rather, such material must be made available with enough time for its effective use by the defense at trial or a plea proceeding. *Id.* at 142 (citing *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001)). Whether such disclosures are made in time for effective use will depend on the materiality of the evidence at-issue and the circumstances of the case. *Id.* at 146. In sum, there is no *Brady* or *Giglio* violation "unless there is a reasonable probability that earlier disclosure of the evidence" would have produced a different result at trial or at a plea proceeding. *Id.* at 144; *United States v. Barrera*, 950 F. Supp. 2d 461, 475–76 (E.D.N.Y. 2013). The determination of a *Brady* violation is inherently a retrospective review made after a conviction or plea, and therefore, a "trial court's role prior to trial . . . is limited." *United States v. Blaszczak*, 308 F. Supp. 3d 736, 739–40 (S.D.N.Y. 2018).

Courts in this Circuit have repeatedly declined to issue pretrial discovery orders pertaining to *Brady* and *Giglio* material, upon a good faith representation by the government that it has complied—and will continue to comply—with its disclosure obligations. *See, e.g.*, *United States v. Underwood*, No. 04 CR. 424 (RWS), 2005 WL 927012, at *1 (S.D.N.Y. Apr. 21, 2005)

20

(declining to issue a pretrial discovery order pursuant to *Brady*, where the defendant failed to

provide a reason to believe the government would not comply with its obligations); *United States*

*v. Canter*, 338 F. Supp. 2d 460, 461-62 (S.D.N.Y. 2004) (declining to compel the government to

disclose *Brady* and *Giglio* material at least 30 days prior to start of trial because the government

made a good-faith representation as to its compliance and reaffirmed "its continuing obligation"

to make timely disclosures); *see also United States v. Heatley*, 994 F. Supp. 483, 492 (S.D.N.Y.

1998) ("A defendant has no constitutional right to receive *Brady*, *Giglio*, . . . or Jencks Act

materials before trial.").

Federal Rule of Criminal Procedure 16(a) provides for discovery and inspection

of certain information "upon a defendant's request," including the defendant's prior statements,

the defendant's prior criminal record, documents and objects, reports of examinations and tests,

and a summary of any expert witness testimony intended to be used at trial. *See* Fed. R. Crim. P.

16(a). A district court has inherent authority to regulate the nature and timing of such discovery.

*See United States v. Giffen*, 379 F. Supp. 2d 337, 344 (S.D.N.Y. 2004) (citing *United States v.*

*Cannone*, 528 F.2d 296, 298 (2d Cir. 1975)); *United States v. Lino*, No. 00 CR. 632 (WHP),

2001 WL 8356, at *19 (S.D.N.Y. Jan. 2, 2001).

b.   Jencks Act and Co-Conspirator Statements

The Jencks Act provides that in a federal criminal prosecution,  "no statement or

report in the possession of the United States which was made by a Government witness or

prospective Government witness (other than the defendant) shall be the subject of subpena [sic],

discovery, or inspection until said witness has testified on direct examination in the trial of the

case." 18 U.S.C. § 3500(a). Under the Jencks Act, "[t]he government is not obliged to disclose

prior statements of a witness until the day that witness testifies on direct examination and then it

is obliged to disclose only statements which relate to the subject matter of the witness'
testimony." *United States v. Aguirre-Parra*, 763 F. Supp. 1208, 1216 (S.D.N.Y. 1991) (citing 18
U.S.C. § 3500(b)).

Accordingly, the Second Circuit has held that the "Jencks Act prohibits a District
Court from ordering the pretrial disclosure of witness statements." *Coppa*, 267 F.3d at 145;
*United States v. Percevault*, 490 F.2d 126, 131-32 (2d Cir. 1974) (finding district court exceeded
its authority in compelling pretrial disclosure of statements made by prospective government
witnesses).

Similarly, Federal Rule of Criminal Procedure 16 does not require the government
to disclose statements by alleged co-conspirators that the government will seek to introduce at
trial pursuant to Fed. R. Evid. 801(d)(2)(E). *See United States v. Robles*, No. 04 CR. 1036
(GEL), 2005 WL 957338, at *1 (S.D.N.Y. Apr. 22, 2005) (citing Fed. R. Crim. P. 16(a)(1)(A)-
(B) and specifying statements that must be produced to defendant); *see also Heatley*, 994 F.
Supp. at 490 ("The Second Circuit has expressly held that Rule 16 simply does not encompass
[co-conspirator] statements, nor does the Jencks Act permit their disclosure over the objection of
the government. . . . Rule 16 permits discovery only of a defendant's statement, not those of
others." (citing *Percevault*, 490 F.2d at 131) (quotations omitted)). Courts in this Circuit
routinely deny requests for early disclosure of 801(d)(2)(E) information as inconsistent with the
Jencks Act. *See, e.g.*, *United States v. Cave*, No. 18 CR. 689-1 (AT), 2019 WL 2764081, at *4
(S.D.N.Y. July 1, 2019).

However, as a matter of case management, courts frequently encourage the
government to produce Jencks Act material prior to trial. *See, e.g.*, *United States v. Stein*, 424 F.
Supp. 2d 720, 728 (S.D.N.Y. 2006) ("The government is, of course, free to produce this material

prior to trial, and the Court recommends this salutary practice, which often serves to avoid those abhorrent lengthy pauses at trial to examine documents." (quotations and citations omitted)).

  c. Federal Rule of Evidence 404(b)

    Pursuant to Federal Rule of Evidence 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  However, such evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 404(b)(2).  Upon request by a defendant, the government must "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial," and must do so before trial, unless the court excuses pretrial notice for good cause. *Id.*

    Rule 404(b) "sets no minimum time for action by the government in this request, nor would any time limit be appropriate, since the evidence the government wishes to offer may well change as the proof and possible defenses crystallize." *Cave*, 2019 WL 2764081, at *1 (citing *United States v. Matos-Peralta*, 691 F. Supp. 780, 791 (S.D.N.Y. 1988) (quotations omitted)); *see also United States v. Nachamie*, 91 F. Supp. 2d 565, 577 (S.D.N.Y. 2000) ("The purpose of Rule 404(b)'s notice provision is to reduce surprise and promote early resolution of any challenge to admissibility of the proffered evidence.  Rule 404(b) does not define reasonable notice but leaves that determination to the sound discretion of the Court." (quotations and citations omitted)).

    Rule 404(b) notices must be produced far enough in advance of trial as to provide the defense with an adequate opportunity to challenge the admissibility of such evidence. *See Cave*, 2019 WL 2764081, at *1; *United States v. Allums*, No. 97 CR. 267 (HB), 1997 WL

599562, at *1 (S.D.N.Y. Sept. 25, 1997) ("The Government has agreed to produce [Rule 404(b)] material in time so that the defense may have an opportunity to challenge their admission; this is all that is required with respect to Rule 404(b) evidence.").

        d.   Demonstrative Evidence and Summary Charts

        The Second Circuit has recognized the benefit of making demonstrative evidence available to the defense within a "reasonable time before trial." *See United States v. Dioguardi*, 428 F.2d 1033, 1038 (2d Cir. 1970). Although pretrial disclosure is not mandatory, some courts have exercised their discretion in requiring the government to make pretrial disclosures to enable defense counsel to raise timely objections to the admissibility of potential exhibits. *See, e.g., United States v. Jasper*, No. 00 CR. 825(PKL), 2003 WL 221740, at *2 (S.D.N.Y. Jan. 31, 2003) (requiring the government to provide defense counsel with an opportunity to view summary charts in advance of trial to facilitate the timely filing of any potential objections (citing *United States v. Oshatz*, 912 F.2d 534, 543 (2d Cir. 1990)).

    *2. Application*

        For the reasons discussed at oral argument, Defendant's motion seeking various evidentiary orders is denied, except insofar as the Government is directed to produce all remaining discovery[6] to Defendant on or before December 28, 2020. Thereafter, the parties shall

---

[6] Specifically, the Government is directed to disclose any notices pursuant to Fed. R. Evid. 404(b), and all remaining *Brady*, *Giglio*, Fed. R. Crim. P. 16, and demonstrative materials and summary charts, on or before December 28, 2020 (the "Disclosure Date"). To the extent that any material the Government would be required to produce under the Jencks Act is also *Brady* or *Giglio* material, the Government is likewise ordered to produce such materials by the Disclosure Date. *See United States v. Martinez-Martinez*, No. 01 CR 307, 2001 WL 1287040, at *5 (S.D.N.Y. Oct. 24, 2001). While I note the Government's right to withhold non-*Brady* and non-*Giglio* Jencks Act material until after witness testimony, *see Coppa*, 267 F.3d at 145, I strongly encourage the Government to disclose all Jencks Act materials by the Disclosure Date to prevent undue delay in the trial proceedings. *See Stein*, 424 F. Supp. 2d at 728; *Lino*, 2001 WL 8356, at *16. Finally, as represented by the Government at oral argument, disclosures pertaining to co-conspirator statements to be introduced at trial pursuant to Fed. R. Evid. 801(d)(2)(E) will be included with the aforementioned *Giglio* and Jencks Act disclosures but will not be separately identified as such.

appear for a final pre-trial conference on January 6, 2021, at 11:00 a.m., during which I will address any remaining evidentiary objections raised by the parties. I have set trial for January 11, 2021. Time is excluded until January 11, 2021 to allow the parties to prepare for trial and in the interest of justice. *See* 18 U.S.C. § 3161.

***

For the reasons stated above, Defendant's motion is denied, except insofar as the Government is directed to make certain evidentiary disclosures as provided in this Order. Defendant may file further motions as necessary. The Clerk is directed to close the motion at ECF No. 27.

SO ORDERED.

Dated:      September 30, 2020
            New York, New York

ALVIN K. HELLERSTEIN
United States District Judge